***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. That all parties are properly before the Commission and the Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between defendant-employer and plaintiff at all relevant times herein.
3. Defendant-employer was an approved self-insured for workers' compensation with Key Risk Management Services acting as the servicing agent at all relevant times herein.
4. Plaintiff's average weekly wage will be determined from a Form 22 that is to be provided by defendant-employer.
5. The depositions and medical records of Drs. Paul E. Brown and Pamela Russell-Howard are a part of the evidentiary record in this matter.
6. The issues to be determined from this hearing are as follows:
 a) Whether plaintiff sustained an injury by accident while in the course and scope of his employment with defendant-employer?
 b) If so, what, if any, benefits is plaintiff entitled to receive under the Workers' Compensation Act?
 ***********
The Pre-Trial Agreement along with its attachments and any stipulations that have been submitted by the parties are incorporated herein by reference.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was born February 7, 1947, was fifty-three years old at the time of the hearing before the Deputy Commissioner. Plaintiff completed the 8th grade but is not able to read or write. All of plaintiff's work experience is comprised of carpentry related jobs.
2. Plaintiff worked for approximately 11 years for defendant-employer as a truss builder which involved heavy lifting on a regular basis of between 50 to 100 pounds or more.
3. Plaintiff testified that on May 25, 1999 he reached across a table with a ratchet to break a pad loose when he experienced a "catch" in his lower back and had difficulty straightening up. Plaintiff did not recall the time of day this happened but he worked most of the day. Plaintiff indicated that he told his supervisor, Ralph Weaver, about the incident. However, Mr. Weaver does not recall plaintiff discussing an injury but that plaintiff had back problems and had a doctor's visit scheduled. Plaintiff testified at the hearing before the Deputy Commissioner that he wanted to go to a doctor of his choice rather than the company doctor and that Mr. Weaver told him that if he did not see the company doctor, it would not be considered workers' compensation. However, according to Mr. Weaver, although it is company policy for injured workers to first see the company doctor, choosing not to see the company doctor would not change the reporting requirements for a workers' compensation claim. Plaintiff was familiar with workers' compensation reporting procedures and had reported previous injuries which were in fact documented by Mr. Weaver.
4. Plaintiff's medical history is significant for back problems including surgery in 1994. In addition, prior to May 25, 1999, plaintiff had been suffering back pain for at least approximately six weeks according to plaintiff, his coworkers and supervisor, as well as his minister. Furthermore, on May 26, 1999 when plaintiff completed an application for short-term disability, plaintiff indicated that he suffered back pain for about 6 weeks. Plaintiff indicated by check marks in two different boxes that his complaints did and did not result from his occupation. Dr. Brown who also completed a portion of the application form indicated that plaintiff's problem was not work related and had been present since mid-April.
5. Dr. Paul E. Brown, who had treated plaintiff for prior back problems including surgery in 1994 and a flare up in August 1996, evaluated plaintiff on May 25, 1999. Plaintiff provided Dr. Brown with a history of back and left leg pain for approximately the last six weeks as indicated by plaintiff on an intake sheet. Plaintiff did not provide a history of any specific incident occurring that day.
6. Dr. Brown diagnosed plaintiff's condition as left leg sciatica and was concerned about a recurrent herniated lumbar disc. Dr. Brown removed plaintiff from work and treated plaintiff conservatively. Dr. Brown did not feel that plaintiff was a surgical candidate but referred plaintiff to Dr. Charles Branch for a second opinion.
7. Plaintiff was evaluated by Dr. Branch on September 29, 1999 at which time plaintiff gave a history of low back and leg pain with numbness and weakness in both legs which symptoms had been present since the first of April 1999. Dr. Branch diagnosed multilevel degenerative disc disease and concurred with Dr. Brown's diagnosis and course of treatment including pain management.
8. Plaintiff was first seen by Dr. Hansen for chronic pain on December 20, 1999 at which time Dr. Hansen indicated the possibility of a work-related injury. However, plaintiff once again did not report a specific injury.
9. On April 21, 2000, Dr. Brown indicated that it was his opinion that plaintiff was totally disabled from all work and had been since he had taken plaintiff out of work on May 25, 1999, and that he did not see plaintiff's condition improving.
10. Thereafter, plaintiff was first seen by Dr. Pamela Russell-Howard, a neurologist, on May 5, 2000 approximately a year after plaintiff's alleged injury. At this time plaintiff reported to Dr. Russell-Howard an injury that occurred at work when he reached out to grab something and had an abrupt onset of back and left leg pain. Dr. Russell-Howard diagnosed plaintiff with chronic pain and felt that he may have arachnoiditis or scarring which occurs after surgery. Although Dr. Russell-Howard was aware of plaintiff's pre-existing back condition including the 1994 surgery, she was unaware that plaintiff had suffered pain for approximately six weeks or more before May 25, 1999.
11. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a specific traumatic incident to his back while in the course and scope of his employment with defendant-employer. Medical evidence, including the testimony of Dr. Brown and Dr. Russell-Howard, supporting that plaintiff's pre-existing back condition was aggravated by or that his current back symptoms or condition was caused by any incident on May 25, 1999 is based on inaccurate assumptions including an inaccurate history of the onset of plaintiff's symptoms.
 ***********
Based on the foregoing findings of fact, the Full Commission concludes as matters of law the following
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the evidence of record that he suffered a specific traumatic incident to his back while working in the course and scope of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the medical evidence of record that his current back condition is causally related to any incident at work. N.C.G.S. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is hereby and the same shall be denied.
2. The parties shall bear their own costs.
This the ___ day of April 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER